**20 P.(2d) 272**

**STATE v. MARQUEZ.**

**No. 3718.**

Supreme Court of New Mexico.

Feb. 15, 1933.

W. B. Bunton, of Magdalena, and Merritt C. Mechem and Waldo H. Rogers, both of Albuquerque, for appellant.

E. K. Neumann, Atty. Gen., and Quincy D. Adams, Asst. Atty. Gen., for the State.

WATSON, Chief Justice.

Felix Marquez was convicted of murder in the second degree, for the slaying of Precillio Gutierrez. On this appeal we find it necessary to consider only the contention that the court erred in refusing to direct a verdict of not guilty.

The cause of death was a gunshot wound in the left breast. The fatal wound was inflicted in front of the house of appellant, from which he and deceased had emerged, fighting. There is an entire absence of evidence that appellant fired, or had, a gun. On the contrary, an eyewitness testifying for the state; who was attracted by three shots and summoned by appellant's call for help, saw the deceased fall at the last shot, found him on the ground with a pistol in his right hand, and found appellant on top of deceased holding him by the right wrist. A first shot, he said, was fired in the house. A second was fired outside and in the direction of appellant. The final shot was muffled as to sound and made no flash.

One Chavez and his wife were witnesses for the state. They were in a house forty or sixty feet distant, on the same side of the street. The evening was dark but there was some artificial light. Through a window, Chavez saw, as he testified, three persons come out of appellant's house, scuffling. "One was kinda turning back and the two others were going that way when I heard that they fire a shot upon the one that was ahead and the one that was ahead fall down. Soon they fire the other shot. I hear the two shots and saw the flash of the gun and that fellow fall on his face. * * * I got up from the chair which I had myself sitting and a door was facing the street very close to the room which I had been. I put my head out and look at the place where the fellow had fall down and I heard that he said 'They have wounded me. I am dying.' Then I heard another voice did answer 'Who?' He said, 'That one who is in there, aint you looking at him?' "

Mrs. Chavez, through the same window, saw three persons emerge from appellant's house, heard two shots, and saw the deceased fall at the first shot. The shots, she says, were fired by "a man that was near" the deceased. She saw the flash of the gun. Though she went to the door with her husband, she heard nothing said.

There was some showing of previous trouble and ill will between the parties and that appellant had said of and to the deceased, "From now on you must be more careful," or, "You have to be on the lookout now." There was also evidence from which the jury might

have inferred that the deceased came to appellant's house because sent for by appellant's daughter, the young wife of the deceased, from whom he had separated. There was no evidence that appellant knew that deceased had been sent for.

The justice of the peace who held the preliminary examination testified to appellant's statement at that time; in substance, that the deceased had shot once in the house, the bullet passing through appellant's hat; that deceased had then struck appellant twice on the head with the pistol; and that in the struggle the shot went off.

In ruling on the motion to direct a verdict of not guilty at the close of the state's case, the trial court said: "Of course, if all the statement that was testified to by the Justice of the Peace was binding evidence here before the court, I think the motion should be granted, but I don't believe it all is, only that part of that statement is controlling which is an admission against interest, that was that he, the defendant, was there. But that is part of the chain, without that there is no evidence in this case that this defendant actually was in that house with this deceased personally by any witness and there wouldn't be any question but with that in, that admission, the circumstances of the struggle, the wrestling, are not so clear to my mind as to entirely absolve this defendant. There is one weak link in this chain and that is, the identity of the ownership of that gun. There has been no effort on the part of the prosecution to identify that as the defendant's. It is a close question."

That motion was waived, as we have frequently held, by the introduction of evidence on behalf of appellant. But our study of this evidence has revealed nothing to strengthen the state's case. Indeed, it is quite convincing that no murder was done. The motion was renewed at the close of the trial.

The case for the state is very unsatisfactory. Such as there is in it to support the theory of murder is, in our judgment, overcome and rendered unsubstantial by the fact that the gun which must have discharged the fatal shot was held in the hand of the deceased.

While the charge included manslaughter, that crime was not submitted to the jury.

Generally the credibility of witnesses and the weight of evidence are matters for consideration elsewhere than in this court on appeal. But such conflict in the evidence as we have here disclosed, developed in the state's case. The undisputed fact positively testified by an eyewitness is exculpatory, as is also the reported testimony of appellant at the preliminary examination. We think it thus devolved upon the state to disclose, by evidence, a theory of guilt consistent with the fact shown by it, that at all times the pistol was in the hand of the deceased. Not having done this, we think it has failed to produce substantial evidence.

The judgment will be reversed, and the cause remanded, with a direction to discharge the appellant.

It is so ordered.

SADLER, HUDSPETH, BICKLEY, and ZINN, JJ., concur.